NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
- - - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:                                        Trenton Vicinage

CHRISTINA LYNN RUSCH,                         Chapter 13

                                       Case No.: 08-22740(MBK)

        Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM DECISION

APPEARANCES:
Christina Lynne Rusch, Pro Se
33 Mine Brook Road
PO Box 214
Liberty Corner, NJ 07938

Albert Russo,
Standing Chapter 13 Trustee
CN 4853
Trenton, NJ 08650-4853

Leslie E. Puida, Esq.
Goldbeck, McCafferty & McKeever
A Professional Corporation
Suite 5000 – Mellon Independence Center
701 Market Street
Philadelphia, PA 19106-1532
Attorneys for U.S. Bank National Association as Trustee for the C-Bass Mortgage Loan
Asset-Backed Certificates, Series 2005-CB3, C/O Litton Loan Servicing LP

---------------------------------------------------------------------------------------------------------
**MICHAEL B. KAPLAN, U.S.B.J.**

      This matter comes before the Court upon the Motion for Relief from the Automatic Stay,

("Motion") filed on behalf of U.S. Bank National Association as Trustee for the C-Bass Mortgage Loan

Asset-Backed Certificates, Series 2005-CB3, C/O Litton Loan Servicing LP (hereinafter "Movant") on

November 6, 2008, with respect to residential property owned by Christina Lynn Rusch (hereinafter "the Debtor"), located at 33 Mine Brook Road, Liberty Corner, N.J. (hereinafter "Residence"). The Court held hearings on the Motion on December 9, 2008, and January 13, 2009.[1] Due to apparent transportation difficulties, the Debtor did not appear for the scheduled 2:00 p.m. hearing held on January 13, 2009. At 3:15 p.m., when the Court released Counsel for the Movant, the Court announced that it would render a decision based on the paper record before the Court, with the Debtor permitted to supplement the record with an additional certification and/or exhibits.

As a threshold matter, this Court has jurisdiction over this proceeding under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984 referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a). The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.

From the pleadings, certifications and exhibits submitted by the parties, the Court distills the following relevant facts and procedural history:

1. The Debtor filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code on July 7, 2008.

2. Prior to the bankruptcy filing, a foreclosure complaint had been filed with respect to her Residence. Specifically, on November 4, 2004, the Debtor executed in favor of HomeAmerican Credit, Inc., d/b/a Upland Mortgage (hereinafter "HomeAmerican"), a note in the amount of $175,000, payable

---

[1] Also before the Court were two additional motions: (1) a Motion to Dismiss Case, filed by the Chapter 13 Trustee, and (2) a Motion to Obtain History Details of all Sheriff's Sales Dates, filed by the Debtor. The Court hereby denies both motions, based upon the factual and legal determinations reached herein.

over a period of thirty (30) years, at an annual fixed rate of interest at 6.15%. In order to secure the aforementioned note, on the same date, the Debtor executed a mortgage in favor of Mortgage Electronic Registration Systems, Inc., as nominee for HomeAmerican, creating a first lien mortgage on the Residence. The mortgage was duly recorded in the Somerset County Clerk's Office on November 23, 2004, in Mortgage Book 5676, at page 1479.

3. The Debtor defaulted under the terms of the note and mortgage by failing to make the November, 2006 payment and all payments thereafter.

4. Notice of the default was sent to the Debtor on February 16, 2007. The foreclosure complaint was filed on February 28, 2007. The mortgage was assigned to U.S. Bank National Association as Trustee for the C-Bass Mortgage Loan Asset-Backed Certificates, Series 2005-CB3, C/O Litton Loan Servicing LP on March 12, 2007. Service of the foreclosure complaint was effectuated on the Debtor on April 18, 2007. The Debtor did not file an answer or otherwise respond to the foreclosure action, and a Motion for Default Judgment was filed on June 8, 2007. A default judgment was entered October 22, 2007, and a sheriff's sale was set for January 22, 2008 (and subsequently adjourned to February 19, 2008). Thereafter, the Debtor filed a motion, heard by Judge Harriet Derman, Presiding Judge of the Chancery Division, Somerset County, seeking to vacate the default judgment, stay the sheriff's sale, remove the proceeding to federal court, and recover $20 million in damages and the restoration of her credit.

5. In seeking relief before Judge Derman, the Debtor submitted a 70-page brief with over 150 exhibits to support her allegations. In this regard, the Debtor claimed (and continues to claim) that she had never defaulted on the mortgage loan, never been late on her payments, had not authorized or was cognizant of any mortgage assignment, had not executed the mortgage documents at issue, had not received

all of the $175,000 loan proceeds (indeed, had not borrowed such amount), had not received credit for $5,654.56 in loan payments (the Debtor additionally alleged that she had prepaid the loan until the year 2030), and had been overcharged for "forced-placed" insurance. The Debtor further contended that at the closing on the mortgage loan, she did not read the closing documents and was denied the benefit of counsel inasmuch as her attorney, Arthur Linderman, Esq., also served simultaneously as the lender's closing agent. Finally, the Debtor argued that her signature, as well as Mr. Linderman's was forged on the mortgage instrument.

6. By Memorandum of Decision and Order filed February 11, 2008, Judge Derman denied nearly all of the Debtor's requested relief, but stayed the sheriff's sale for forty-five (45) days to allow the Debtor to appeal or "cure" the obligation owing the mortgagee. Judge Derman further directed the mortgagee to provide a payment history within fifteen (15) days to assist the Debtor in determining the proper amount due and owing. In reaching her decision, Judge Derman, *inter alia*, made the following findings:

> A. There was no excusable neglect in the Debtor's failure to answer the foreclosure complaint.
> B. There was no irregularity in the assignment of the mortgage. Movant was the rightful holder of the mortgage.
> C. The use of Debtor's attorney as a closing agent was not improper and did not serve as a valid defense to the foreclosure proceeding.
> D. Debtor's alleged prepayment of the mortgage did not bar foreclosure.
> E. Debtor's counsel did receive the loan proceeds in the amount of $173,135.44.
> F. Debtor's claims of forgery were not credible.
> G. Debtor's issues with respect to insurance payments did not bar foreclosure.

7. No appeal of Judge Derman's decision was taken by the Debtor. Subsequently, a sheriff's sale was held on March 17, 2008, but was vacated by Court order dated April 25, 2008 (Judge

Derman ruled that the mortgagee had scheduled the sale prematurely, and stayed the sale until June 3, 2008). The Debtor's bankruptcy filing ensued thereafter.

## DISCUSSION

In contesting Movant's Motion, the Debtor now raises the same allegations brought previously before Judge Derman.[2] In order to succeed in her effort to set aside the default foreclosure judgment, the Debtor necessarily had to "demonstrate the presence of meritorious defenses, worthy of judicial determination." *O'Connor v. Altus*, 67 N.J. 106, 128-129 (1975); *Bank of New Jersey v. Pulini*, 194 N.J. Super. 163, 165-166 (App. Div. 1984). As noted by Judge Derman in her Memorandum of Decision, it is well established that the only material issues in a foreclosure proceeding are the validity of the note and mortgage, the amount of the indebtedness and alleged default, and the right of the mortgagee to resort to the mortgaged premises. *See Central Penn Nat'l. Bank v. Stonebridge, Ltd.*, 185 N.J. Super. 289, 302 (App. Div.1982); *Thorpe v. Floremoore Corp.*, 20 N.J.Super. 34, 37 (App. Div.1952); *Great Falls Bank v. Pardo*, 263 N.J. Super. 388, 394 (Ch. Div. 1993). After oral argument and review of lengthy submissions, Judge Derman concluded that none of the Debtor's contentions constituted a meritorious defense against the foreclosure proceeding, and that many of the Debtor's factual assertions lacked credibility.

---

[2] The Debtor's Chapter 13 Plan, filed on October 20, 2008, reflects that the Debtor anticipates bringing an adversary proceeding to contest Movant's lien and claim, bottomed on the same alleged wrongful conduct litigated before Judge Derman. Additionally, the Debtor has provided Chambers with two volumes of documents which include many of the same documents presented in the state court proceeding. As of this writing, no adversary proceeding has been filed; however, it is clear to the Court from the Debtor's written submissions and exhibits filed in opposition to the Motion, that the same issues and arguments have been regurgitated for purposes of this proceeding.

Notwithstanding Judge Derman's efforts to afford the Debtor an opportunity to appeal the ruling, no such appeal was taken. Rather, the Debtor opted to pursue relief in another venue, the Bankruptcy Court. For the reasons explained below, this Court will not, indeed cannot pursuant to the "Rooker-Feldman Doctrine," review Judge Derman's findings and decision as they relate to the validity of the note and mortgage executed by the Debtor, the amount of the indebtedness and alleged default, and the right of Movant to foreclose.

As explained by the Supreme Court of the United States, the "Rooker-Feldman Doctrine" is a statutory-based doctrine which stands for the proposition that "lower federal courts possess no power whatever to sit in direct review of state court decisions." *Atlantic Coast Line Railroad Company v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 296 (1970). "Under the Rooker-Feldman doctrine, a district court is precluded from entertaining an action, that is, the federal court lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling." *Taliaferro v. Darby Township Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006). "[A]pplication of the Rooker-Feldman doctrine is necessarily limited to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* (quoting *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005).

The doctrine precludes "lower federal court jurisdiction over claims that were actually litigated or those 'inextricably intertwined' with adjudication by a state court." *Parkview Assoc. P'ship v. City of Lebanon*, 225 F.3d 321, 325 (3d Cir. 2000). "[A] federal action is inextricably intertwined with a state adjudication, and thus barred in federal court under Rooker-Feldman, '[w]here federal relief can only be

6

predicated upon a conviction that the state court was wrong.'" *Id.* (quoting *Centifanti v. Nix*, 865 F.2d 1422, 1430 (3d Cir. 1989). "In other words, Rooker-Feldman does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders . . . ." *Walker v. Horn*, 385 F.3d 321, 330 (3rd Cir. 2004) (citations, internal quotations, and ellipses omitted).

The Third Circuit, as well as a number of bankruptcy courts within the Eastern District of Pennsylvania (specifically construing TILA as well as RESPA), have held that the Rooker-Feldman doctrine bars claims for rescission in bankruptcy proceedings, including adversary proceedings, if such claims would have the effect of undoing a state court foreclosure action. *See In re Knapper*, 407 F.3d 573, 580 (3d Cir.2005); *In re Stuart*, 367 B.R. 541, 549-550 (Bankr.E.D.Pa.2007); *In re Cooley*, 365 B.R. 464, 470-473 (Bankr.E.D.Pa.2007); *In re Reagoso*, Bankr.No. 06-12961(JKF), 2007 WL 1655376, at *2-3 (Bankr.E.D.Pa. June 6, 2007). *See also In re Madera* 388 BR 586 (E.D.Pa. 2008) (holding that Rooker-Feldman bars TILA, RESPA & Unfair trade practices Act claims in default foreclosure judgment).

In the present case, were the Court to grant the Debtor's relief sought—*i.e.*, review Judge Derman's decision to deny vacating the default judgment—the Court clearly would violate the elements to the Rooker-Feldman doctrine. First, Debtor is "a state-court loser," now taking issue and contesting Judge Derman's decision. The Debtor had moved unsuccessfully before Judge Derman to vacate the default judgment, stay the sheriff's sale, remove the proceeding to federal court, and recover $20 million in damages and the restoration of her credit. Judge Derman denied all counts, save staying the sheriff's sale (which is not at issue before this Court), finding that the Debtor had failed to raise any meritorious defenses to the foreclosure proceeding. Second, the Debtor, by her own strategic design, failed to take an appeal of the state-court decision. Third, the Debtor, in opposing stay relief, seeks to have this Court make

7

findings which necessarily rest upon a conviction that Judge Derman erred with respect to her determinations regarding the validity of the note and mortgage, the amount of the indebtedness and alleged default, and the right of Movant to foreclose—all of which are "inextricably intertwined" with the state-court adjudication, for they are the only material issues in a foreclosure proceeding. Judge Derman's decision addressed and adjudicated each of those material issues. Fourth, to deny Movant's requested relief, this Court would undertake improperly the role of a reviewing court with respect to the state court's prior findings, and by necessity be compelled to overturn Judge Derman's decision. "[The] Rooker-Feldman doctrine does not allow [the Debtor] to seek relief that, if granted, would prevent a state-court from enforcing its orders . . . ." *Walker*, 385 F.3d at 330. Relief to the Debtor from the state-court disposition may be found only by filing a state-court appeal. Accordingly, Movant's Motion for Relief from the Automatic Stay is granted.

With respect to the Trustee's Motion for Dismissal of the within case, the Court is cognizant of the fact that the motion is predicated upon Debtor's failure to appear repeatedly for a 341(a) meetings of creditors. While ordinarily the Court would be inclined to grant a continuance of a dismissal motion to permit the Debtor an additional opportunity to appear, the Court has reviewed the Debtor's proposed Chapter 13 plan and finds that such plan offers no viable reorganization effort apart from anticipated litigation before this Court. As discussed *infra,* such litigation offers the Debtor no relief from the pending foreclosure proceedings, and thus this Court finds sufficient cause to dismiss this case pursuant to 11 U.S.C. Section 1307(c). More significantly, dismissal of this proceeding may offer the Debtor an opportunity to pursue recently enacted federal and/or state-court mediation and financial assistance programs. Furthermore, nothing in this decision bars the Debtor from pursuing her rights for an affirmative

monetary recovery in the appropriate forum under applicable state or federal law, to the extent permitted.

The Court will enter the appropriate orders.

Dated: January 23, 2009

*Honorable Michael B. Kaplan*
United States Bankruptcy Judge